IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LANCE SUNDSMO,

                      Plaintiff,                      OPINION AND ORDER

    v.

                                                  20-cv-100-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                      Defendant.

      Pursuant to 42 U.S.C. § 405(g), plaintiff Lance Sundsmo seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Sundsmo raises two core challenges in this appeal: (1) the ALJ erred in assessing the weight of a treating source statement and a functional capacity evaluation; and (2) the ALJ erred by finding that a significant number of jobs existed that Sundsmo could perform. The court held a telephonic hearing on November 19, 2020, at which the parties appeared by counsel. For the reasons that follow, the court will affirm the Commissioner's final determination.

BACKGROUND[1]

**A. Overview**

      Plaintiff Lance Sundsmo has at least a high school education, is able to communicate in English, and has past work experience as a wholesale delivery driver, material handler, truck driver and warehouse technician / laborer, all medium or heavy

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

exertional level jobs. Sundsmo has not engaged in substantial gainful activity since September 16, 2015, the same date as his alleged onset disability date.

Sundsmo applied for social security disability benefits on February 22, 2016, claiming an alleged disability onset date of September 16, 2015. With a birth date of August 26, 1972, Sundsmo was 43 years-old at his alleged disability onset date, which is defined as a "younger individual." 20 C.F.R. § 416.963. Sundsmo claimed disability based on nerve damage in back, damaged L1-L5, sleep apnea, arthritis in back, diabetes, arthritis in hands and knuckles, trigger finger and thumb, COPD, high blood pressure and high cholesterol, and acid reflux. (AR 133.)

### B. ALJ Decision

ALJ Bill Laskaris held a video hearing on February 11, 2019, at which Sundsmo appeared personally and by the same counsel, who now represents him in this appeal. On March 26, 2019, the ALJ issued an opinion finding that Sundsmo had not been under a disability from September 16, 2015, through the date of the opinion. Even so, the ALJ credited Swanson's claims that he suffered from the following severe impairments: degenerative disc disease; asthma/chronic obstructive pulmonary disease ("COPD"); diabetes mellitus with associated neuropathy; obesity; obstructive sleep apnea; hypertension; and osteoarthritis. (AR 17.) At the same time, the ALJ concluded that a number of plaintiff's other impairments were not severe, but he does not challenge these determinations on appeal. (AR 17-18.) The ALJ further found that Sundsmo had no impairment or combination of impairments that met or medically equaled one of the listed impairments (AR 18-20), which plaintiff also does not challenge.

2

Ultimately, the ALJ determined that Sundsmo had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following detailed limitations:

- stand/walk for six hours as well as sit for six hours in an eight-hour workday;
- sit-stand option that allows the claimant to sit 15 minutes after standing 15 minutes or stand 15 minutes after sitting 15 minutes provided the claimant is not off task more than 10% of the work period;
- never kneel or crawl;
- never climb ladders, ropes, or scaffolds;
- occasionally climb ramps, climb stairs, stoop, and crouch;
- frequently handle objects, that is, perform gross manipulative tasks with the bilateral upper extremities;
- limited to jobs that can be performed while using a hand-held assistive device required only for uneven terrain or prolonged ambulation and the contralateral upper extremity can be used to lift and carry up to exertional limits;
- avoid concentrated exposure to extreme cold and extreme heat;
- avoid even moderate exposure to frequent vibration;
- avoid even moderate exposure to pulmonary irritants such as fumes, odors, dusts, and gases;
- avoid even moderate exposure to poorly ventilated areas;
- avoid concentrated use of or exposure to moving machinery;
- avoid all exposure to unprotected heights; and
- the claimant's work is limited to simple, routine, and repetitive tasks.

(AR 21.)

In formulating his RFC, the ALJ expressly considered Sundsmo's hearing testimony that his "physical conditions cause symptoms such as persistent joint pain, shortness of

breath, easy exertion with physical activity, weakness, fatigue, as well as widespread loss mobility or functionality on his back and extremities." (AR 21.) The ALJ also considered Sundsmo's account that he "cannot lift more than five pounds or perform sustained gross motor and manipulative tasks with the bilateral upper extremities," "has significant difficulty engaging in basic postural and weight-bearing activities through the day without the use of an assistive device such as a cane," "cannot adequately complete basic daily tasks," and "can no longer engage in fulltime work activities." (AR 21-22.) In the end, however, the ALJ discounted Sundsmo's account, finding that his statements are "not entirely consistent with the medical evidence and other evidence in the record." (AR 22.)

Material to plaintiff's challenges on appeal, the ALJ considered the occupational therapy functional capacity evaluations performed by Tanya Schaer on September 15, 2015, the day before his alleged disability onset date, and again in June 2016. (AR 23-24.) The ALJ discounted Schaer's notes because "the sporadic and sparse treatment records after his alleged onset date show that he was able to engage in sustained walking with a cane or 'with minimal assistance' as well as that he had appropriate or only modest loss in rage on motion, strength, in neurologic functioning in his lumbar spine, hips, and lower extremities." (AR 24 (citing record).) As for his upper extremity, the ALJ noted that Sundsmo underwent trigger finger surgery on his left thumb and outpatient physical therapy in February 2015, again shortly before his alleged onset date. (AR 24.) The ALJ also noticed that treating physicians referred to his hand pain as "'resolved' or presenting 'no current issues,'" and that on examination, he had "normal or only slightly diminished strength, reflexes, range of motion, and musculoskeletal appearances in his upper

extremities through his period of alleged disability. (AR 24.) Despite this assessment, the ALJ nonetheless relied on Schaer's determinations to adopt a number of exertional limitations described above in the RFC, including use of a cane, even though Schaer herself noted that the use of a cane was not prescribed by a medical provider.[2]

Central to his challenges on appeal, the ALJ determined the weight to be assigned to various medical opinions. While recognizing that Schaer, as an occupational therapist, is "not an acceptable medical source who can establish the existence of a medically determinable impairment or provide a medically-based opinion per our regulations," the ALJ nonetheless "fully considered" her statement in determining the severity of his impairments and their effect on Sundsmo's ability to function. (AR 26.) In her June 2016 functional capacity assessment in particular, Schaer concluded that Sundsmo: could function "at a light work level with a safe lifting limit of 20 pounds occasionally and 10 pounds or less frequently"; "could occasionally walk, twist, and pivot but can only seldom bend, squat, climb, and kneel"; "should avoid unprotected heights"; and "must be afforded the opportunity to alternate between sitting, standing, and walking." (AR 26 (citing 9F/13).) Still, the ALJ discounted Schaer's opinions because she (1) did not define "seldom," (2) did not describe the duration Sundsmo would need to alternate between sitting, standing and walking, and (3) did not have a treating relationship with Sundsmo, only having seen him twice.

---

[2] Earlier in his opinion, the ALJ also noted Schaer's notes describing Sundsmo's "behavior was questionable in terms of effort with testing and accuracy." (AR 23 (quoting 6F/27-29).)

The ALJ also considered the weight to give to Sundsmo's treating provider, Dominic Chu, M.D., determining that his opinions should be given "less weight" (AR 26) because he: (1) referred Sundsmo to Schaer for a functional capacity evaluation and "effectively adopted her opinions," rather than relying on "his clinical observations and diagnoses"; (2) relied on Sundsmo's "recount of his symptoms in diagnosing the claimant with lumbosacral spondylosis despite only mild pathologies present in the claimant's radiographic image studies of the lumber spine"; (3) deemed Sundsmo's impairments as "permanent" in June 2016, without discussing any improvement Sundsmo might have it he complied with his diabetic treatment regimen; and (4) provided "little explanation for limiting Sundsmo to working only six hours per day." (AR 26-27.)

In consultation with the vocational expert, therefore, the ALJ concluded that Sundsmo could perform: (1) surveillance system monitor, with approximately 10,149 jobs in the national economy; (2) callout operator, with approximately 32,335 jobs in the national economy; and (3) tube operator, with approximately 24,843 jobs in the national economy. (AR 29-30.) Based on his findings, the ALJ ultimately concluded that Sundsmo was not disabled. This appeal followed.

### C. Pertinent Medical Records

On June 6, 2016, Sundsmo saw Occupational Therapist Tanya Schaer again for a functional capacity evaluation, referred by his treating physician Dr. Chu. (AR 923-28.) Schaer noted that Sundsmo arrived using a cane, but that the cane was self-prescribed and not recommended by a medical professional. (AR 924.) Schaer also noted that Sundsmo was using the cane incorrectly, but when she instructed him on its appropriate use, he

6

reported that "using that gait pattern felt 'worse.'" (*Id.*) Sundsmo further reported pain "in his low back, centrally located," denying any radicular type symptoms, but later in the appointment he referred to "sharp shooters." (*Id.*) Finally, Sundsmo completed the McGill Pain Questionnaire, scoring 26 points, which Schaer noted "suggests his reports of pain may be reliable." (*Id.*) Sundsmo personally rated his pain from 2.5 to 6 or 7 on a 10-point scale.

Schaer then conducted a variety of physical examinations, some of which were normal, while others noted decreased strength or range of motion. At times, Schaer also noted that Sundsmo's "effort [was] questionable." (*See* AR 927.) Based on these evaluations, Schaer concluded:

> During the evaluation client performed tasks requiring: Grip strength, gross motor coordination, bending, crouching, squatting, kneeling, crawling, twisting, balance, walking, climbing, pushing, pulling and a variety of lifting. The client demonstrated some overt pain behaviors during testing that would result in questionable effort. However, the client provided realistic and reliable measures of pain during testing.

(AR 928.) Based on her evaluation, Schaer determined that Sundsmo could function "at a light work level with a safe lifting limit of 20 pounds occasionally and 10 pounds or less frequently." (*Id.*) She also determined that Sundsmo could walk and twist/pivot occasionally, but that he should "seldom" bend, squat, climb or kneel," and should alternate sit/stand/walk, while avoiding unprotected heights. (*Id.*)

Finally, as alluded to above, in a treatment note also dated June 6, 2016, Dr. Chu opined that he "recommend[s] from the testing recently from the Performance Center that [Sundsmo] limits his work to light duty work, six hours a day with the restriction regarding

7

walking, bending, and twisting of the back, as well as avoid working at unprotected heights. He is quite unsteady with his gait. Also ability to allow him to sit and stand, alternating positions." (AR 921; *see also* AR 922 (return to work form).) In that note, Dr. Chu further noted that he last saw Sundsmo almost a year before, and that Sundsmo reported his pain had worsened in the interim, specifically complaining about pain in his back, running down his thigh. (AR 920.) On examination, Dr. Chu noted, Sundsmo was

> [a]n obese male who stands up without a straight back. There is some tenderness over the S1 joint on both sides. Very limited extension. Forward bending up to 60 degrees. Increasing pain with bending to both sides, too. He really struggled to stand on toes and heels. Straight leg raising test revealed increasing pain in the back in the sitting position. Ankle jerks and knee jerks at 1+ and symmetrical. Sensory intact to touch, pinprick, and vibration in the lower extremities. Muscle strength intact on the quadriceps, biceps, extensor/flexor of the ankles and toes. Chest expansion is good. Lungs are clear. Heart sounds are normal. No murmur.

(AR 920.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that

8

of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises two core challenges: (1) the ALJ erred in assessing the weight of a treating source statement and a functional capacity evaluation; and (2) the ALJ erred by finding that a significant number of jobs existed that Sundsmo could perform. The court will address each challenge in turn.

**I. Evaluating Dr. Chu's Opinions and Schauer's Functional Capacity Evaluation**

Plaintiff faults the ALJ for discounting Dr. Chu's opinions, as well as Schauer's functional capacity evaluation ("FCE"), on which Chu relied in rendering his opinion. Plaintiff lobs several challenges of the ALJ's treatment of these two, related opinions. *First*, with respect to the FCE itself, plaintiff argues that the ALJ erred in disregarding it, directing the court to *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004), for support. In *Barrett*, however, the Seventh Circuit faulted the ALJ for giving no consideration to the physical therapist's notes. *Id.* at 1067. Here, the ALJ both considered the Schaer's FCEs and assigned them "some weight," translating several of her observations into additional nonexertional limitations. Critically, the court in *Barrett* also rejected the claimant's argument that "a physical therapist's report should be given controlling weight"; instead,

9

the Seventh Circuit simply held that "such reports are entitled to consideration," which the ALJ plainly did. *Id.*

Plaintiff also argues that the ALJ failed to comply with SSR 06-3p, which governs the evaluation of opinion evidence from a non-recognized source, representing that the ALJ simply relied on Schaer's status as a non-acceptable medical source to justify "an almost blanket rejection of this evidence." (Pl.'s Opening Br. (dkt. #14) 14.) Again, this argument does not confront the ALJ's opinion. While the ALJ recognized that Schaer is not an acceptable medical source, he "fully considered the statement provided by Ms. Schaer in determining the severity of the claimant's impairments and their effect on the claimant's ability to function." (AR 26.) Moreover, the ALJ did not solely (or at all) rely on the fact that she is a non-acceptable medical source in discounting her opinion. Instead, as set forth above, the ALJ limited the weight placed on the FCEs because Schaer (1) did not define "seldom"; (2) did not describe the duration Sundsmo would need to alternate between sitting, standing and walking; and (3) did not have a treating relationship with Sundsmo, only having seen him twice. Moreover, the court notes, as the Commissioner did in his opposition, that the ALJ was entitled to discount a report if the examiner raises question about factitious or malingering behaviors, which the ALJ did here. *See Pytlewski v. Saul*, 791 F. App'x 611, 614-15 (7th Cir. 2019); *see also* AR 23 (noting Schaer's note that Sundsmo's "behavior was questionable in terms of effort with testing and accuracy of performance").

*Second*, plaintiff contends that the ALJ erred in discounting Dr. Chu's opinion because he relied on Schaer's report. Instead, plaintiff contends that Chu relied on his own examination, and even more specifically, relied on his finding of a positive straight-leg raise test. While the report, as described above, included notes on Dr. Chu's examination of Sundsmo, the portion of the report in which Chu describes Sundsmo's limitations, he expressly states that his recommendations are based on "testing recently from the Performance Center." (AR 921.) With respect to the physical examination, while Dr. Chu noted "some tenderness" in Sundsmo's lower back" and "pain with bending," Chu also noted that "[s]ensory intact" and "[m]uscle strength intact." (AR 920.)

Still, plaintiff latches onto Chu's reference to "[s]traight leg raising test revealed increasing pain in the back in the sitting position," characterizing it as "positive straight-leg-raising," which has significance in assessing whether the requirements of certain listings are met, an argument plaintiff does not make on appeal. (AR 920; Pl.'s Opening Br. (dkt. #15) 14.) However, even that characterization is suspect given that: (1) Chu's test appears to be administered in a sitting position, contrary to the protocol for performing a straight-leg test; and (2) Chu only notes pain in his back, not pain radiating down his leg, which is required for a positive finding. *See* "Straight_leg_raise," Wikipedia, https://en.wikipedia.org/wiki/Straight_leg_raise.

All of this is to say, that the plain language of Dr. Chu's report, when coupled with the limited findings in his physical examination -- and the further fact that it had been almost a year since Chu's last visit with Sundsmo -- provide an adequate basis for the ALJ

11

limiting the weight of Chu's opinion based on his finding that it primarily rested on an FCE, which he also had discounted.

Plaintiff next criticizes the ALJ for rejecting Dr. Chu's opinion that work restrictions are permanent. In his opinion, the ALJ explained that the June 2016 assessment "was early in the claimant's period of alleged disability and did not discuss any improvement the claimant might have if he complied with his diabetic treatment regimen." (AR 27.) Plaintiff argues that the ALJ played doctor by assuming that "Sundsmo's back problems stemmed from his diabetes and assuming that the back problem would likely improve with compliance with diabetic treatment." (Pl.'s Opening Br. (dkt. #14) 17.) However, the ALJ did *not* state that Sundsmo's back pain would improve with diabetes management. Instead, the ALJ suggested that his condition *may* improve more generally with diabetes management, a conclusion supported by the medical record, as the ALJ noted earlier in his opinion that medical records showed "[w]hen the claimant adhered to his diabetes treatment program, even partially, his doctors noted improvement in his A1C and blood-glucose levels as well as neurologic functioning in his extremities." (AR 24 (citing 11F/6-7, 18, 30, 31, 40).)

Finally, plaintiff criticizes the ALJ's statement that Dr. Chu relied too heavily on Sundsmo's subjective account, rather than objective findings. As described above, Chu's June 2016 physical examination resulted in fairly limited findings. Moreover, as the ALJ expressly noted, "radiographic image studies of the lumbar spine" showed "only mild pathologies present." (AR 26; *see also* AR 22 (discussing March 2015 MRI results which showed "minimal early degenerative disk disease" and "minimal lumbar spinal

12

dextroscoliosis").)  The regulations expressly provide that an ALJ may discount a treating physician's opinion where the opinion are inconsistent with "other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

For all these reasons, the court concludes that the ALJ provided good reasons for discounting Dr. Chu's opinions, including that:  (1) Chu based his opinions on an FCE and the FCE was appropriately discounted; (2) Chu failed to give any explanation for the six-hour per day limitation; (3) the ALJ cast at least some doubt on Chu's "permanent" characterization; and (4) Chu's findings are inconsistent with the objective medical evidence as derived from radiographic image studies that show mild or minimal issues.  As such, the court rejects this basis for remand.

## II. Significant Number of Jobs Finding

In finding that Sundsmo was not disabled, the ALJ relied on the VE's testimony that there were three jobs that Sundsmo could perform given his hypothetical questions, which were consistent with the RFC.  As detailed above, the VE estimated that the three jobs had 10,149, 24,843, and 32,335 positions respectively, in the national economy for a total of 67,327 available jobs.  Bootstrapping on a recent decision from the Northern District of Indiana, *James A. v. Saul*, No. 1:19-CV-180-JVB, 2020 WL 3888155 (N.D. Ind. July 10, 2020), plaintiff contends that the ALJ erred in failing to consider whether there were significant jobs in the regional economy, namely in Wisconsin, that Sundsmo could perform.  (Pl.'s Opening Br. (dkt. #14) 22.)  *James A.*, however, does not stand for the proposition that an ALJ *must* consider the number of jobs in a claimant's state (or as plaintiff argues here, in the claimant's local region) to determine whether there are a

13

significant number of jobs available. To the contrary, while the court in *James A.* did a rough calculation of the available jobs in Indiana to illustrate the fact that the ALJ erred in finding a significant number of jobs available in the national economy, the court expressly noted that it "does not rely on this rough approximation of jobs available in Indiana." *Id.* at *3; *see also Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2005) ("Why local and state statistics are included is unclear, since if there is a significant number of jobs that the applicant for benefits can perform anywhere in the United States he is deemed not disabled[.]"). Moreover, as the Commissioner noted, the *James A.* court did not drill down into regional numbers on its own, but rather because "the agency relied on the finding in *Liskowitx* [*v. Astrue*, 559 F.3d 736 (7th Cir. 2009,] that 1,000 jobs regionally is a sufficient number" in upholding an ALJ's reliance on the existence of some 14,500 jobs identified by the vocational expert in the national economy. *Id.* at 745-46.

Even so, the question remains whether the ALJ's reliance on these national job numbers formed a sufficient basis for him to conclude that there are "a significant number" of jobs for Sundsmo to perform. Consistent with *Alaura*, plaintiff concedes that the relevant regulation provides that: "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . [w]ork exists in the immediate area in which you live[.]" 20 C.F.R. § 404.1566. Still, plaintiff's counsel contended at oral argument that notwithstanding decades of case law to the contrary, no threshold number is sufficient nationally, regionally or locally, and that rather the ALJ must engage in a balancing test

14

specific to the claimant's specific characteristics, residual abilities, and nature and location of the identified jobs.

Returning to the national numbers on which the ALJ relied in this case, as noted, the VE identified a total of 67,327 jobs in the national economy that Sundsmo could perform. In contrast, the VE only identified approximately 14,500 jobs in the national economy in *James A.*. While the number here is more than four times then that number, both parties stop short of offering clear guidance on whether this roughly 67,000 number in this case is sufficient to support a finding that there are "significant numbers" of jobs. Although the Commissioner's counsel acknowledged that case law would support an upper boundary of 100,000 jobs and a lower boundary of 15,000 jobs in the national economy, this still leaves the national jobs numbers available to the claimant here somewhere in the middle. Indeed, a recent decision out of the Northern District of Indiana determined that 120,350 jobs in the national economy was not a significant number. *Sally S. v. Berryhill*, No 2:18-cv-460, 2019 WL 335033, at * 11 (N.D. Ind. July 23, 2019). On the other hand, a Northern District of Illinois court concluded that 40,000 jobs in the national economy *is* a sufficient number. *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019.) For its part, the Seventh Circuit has determined that numbers *exceeding* the 67,000 at issue here meet the requirement of "significant numbers." *See, e.g.*, *Weartherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (concluding that 140,000 jobs in the national economy was "well above the threshold of significance"); *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019) (holding that 110,000 jobs in the national economy was sufficient).

In the end, plaintiff has raised an interesting legal question for which this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations, at least absent express reliance on regional or localized numbers by the ALJ or the agency on review. At this point, therefore, the court will affirm the Commissioner's ruling.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Lance Sundsmo's application for disability insurance benefits is AFFIRMED.

Entered this 20th day of November, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge